United States District Court
Southern District of Texas
**ENTERED**
February 04, 2016
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOHN E. GASPARI II, ARJUN | § | |
| RAVISHANKAR, and NANCY A. SMITH, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. H-13-2353 |
| | § | |
| FMC TECHNOLOGIES, INC., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND RECOMMENDATION

Before the Magistrate Judge upon referral from the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B), is Defendant FMC Technology, Inc.'s Motion for Summary Judgment (Document No. 26) and Defendant FMC Technologies, Inc.'s Motion for Summary Judgment on Plaintiff Gaspari's Termination Claim (Document No. 53). Having considered the motions, the responses in opposition (Document Nos. 27 & 57), Defendant's replies (Document Nos. 32 & 63), the supplemental briefing (Document Nos. 59 & 64), all the summary judgment evidence, and the applicable law, the Magistrate Judge RECOMMENDS, for the reasons set forth below, that Defendant's Motions for Summary Judgment (Document Nos. 26 & 53) be GRANTED.

## I.    Background and Procedural History

This is an employment discrimination case brought by three members of Defendant's Global Sourcing and Manufacturing Department: John Gaspari ("Gaspari"), Arjun Ravishankar ("Ravishankar"), and Nancy Smith ("Smith"). Each of these three Plaintiffs alleges that they were discriminated against on the basis of their sex (Gaspari and Smith), race and national origin

(Ravishankar), and age (Smith); subjected to a hostile work environment; and retaliated against. Gaspari alleges sex discrimination claims under both Title VII, and § 21.051 of the Texas Labor Code.  Ravishankar alleges race and national origin discrimination claims under Title VII, 42 U.S.C. § 1981, and § 21.051 of the Texas Labor Code.  Smith alleges sex discrimination claims under Title VII and § 21.051 of the Texas Labor Code, and age discrimination claims under the ADEA.  Gaspari, Ravishankar and Smith all also allege retaliation claims under Title VII, and Ravishankar additionally alleges a retaliation claim under § 1981.

According to the allegations in Plaintiffs' First Amended Complaint (Document No. 38), Gaspari is a 38 year old, white homosexual male.  He alleges that he "was subjected to discriminatory conduct and a hostile work environment by his superiors and managers based solely on their preconceived stereotypes of male masculinity and their perception of [his] sexual orientation. [He] also became the target of reverse discrimination by his superior Ana Santiago, who favored Hispanic employees and openly disparaged [him] for being white." (Document No. 38 at 3).  Plaintiff Ravishankar is a 30-year old male of Indian origin.  He alleges that he "was subjected to Defendant FMC's racial animosity and open hostility based [on] his race and national origin[,] [and] a continuous barrage of racially disparaging comments, insults, and degrading treatment from FMC's supervisory and managerial employees[,which] harassment was of such a severe and pervasive nature that it created a racially hostile work environment that adversely affected the terms and conditions of Ravishankar's employment with Defendant FMC." (Document No. 38 at 18).  Plaintiff Smith is a 54 year old white female.  She alleges that she "was discriminated against and harassed because of her age, 54, and because of her sex, female.  Defendant FMC's supervisory and managerial employees subjected [her] to different and less favorable terms and conditions of

employment than what was afforded to male employees and other employees who were substantially younger than [her].  Defendant's supervisory and managerial employees also subjected [her] to a sexually hostile and ageist work environment." (Document No. 38 at 25).

In its comprehensive Motion for Summary Judgment, Defendant FMC Technologies, Inc. ("FMC") seeks summary judgment on all the claims asserted against it by Plaintiffs Gaspari, Ravishankar and Smith.  According to FMC, summary judgment is warranted on each Plaintiff's hostile work environment claims based on its affirmative *Ellerth/Faragher* defense, which it has established with uncontroverted evidence and upon which there is no genuine issue of material fact. *Burlington Industries v. Ellerth*, 524 U.S. 742, 765 (1998); *Faragher v. Boca Raton*, 524 U.S. 775, 807 (1998).  In addition, FMC argues that none of the Plaintiffs can establish the essential elements of a hostile work environment claim.  As for the disparate treatment discrimination and retaliation claims, FMC maintains that none of the Plaintiffs can, or have, established a *prima facie* case of disparate treatment discrimination, none have come forth with evidence of pretext, and none have any summary judgment evidence to support a claim of retaliation.  Plaintiffs, in their initial 72-page response to the motion, first argue that summary judgment should be denied, or the motion continued, because they have not been able to conduct sufficient discovery to oppose the motion. Plaintiffs then argue that FMC had not met its burden on its affirmative *Ellerth/Faragher* defense, that there is summary judgment evidence, which raises a genuine issue of material fact as to whether actionable harassment occurred, whether they were subjected to retaliation in response to their workplace complaints, and whether they suffered adverse employment actions based on their respective, protected classifications.

Subsequent to the completion of briefing on Defendant FMC's Motion for Summary

Judgment, this case was transferred to the docket of United States District Judge Alfred H. Bennett. Upon transfer, a new Docket Control Order was entered and any prior restriction on the scope of discovery was lifted.  In addition, an Amended Complaint (Document No. 38) was filed, whereupon Defendant FMC filed an additional Motion for Summary Judgment on Plaintiff Gaspari's Termination Claim (Document No. 53).   Then, after having conducted additional discovery, Plaintiffs sought and were granted leave to file supplemental summary judgment evidence in opposition to Defendant FMC's initial Motion for Summary Judgment.   Defendant was, concurrently, given the opportunity to respond to any additional/supplemental summary judgment evidence.   As of this date, Defendant FMC's two Motions for Summary Judgment are now fully briefed and ripe for ruling, with both sides having been given a full and fair opportunity to submit their arguments and summary judgment evidence.

## II.    Summary Judgment Standard

Rule 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  The moving party must initially "demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 106 S. Ct. 2548, 2553 (1986). Once the moving party meets its burden, the burden shifts to the nonmovant, "who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists" and that summary judgment should not be granted.  *Norwegian Bulk Transport A/S v. International Marine Terminals Partnership*, 520 F.3d 409, 412 (5th Cir. 2008); *see also Morris v. Covan World Wide Moving, Inc.*,

144 F.3d 377, 380 (5th Cir. 1998).[1]  A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in a pleading, and unsubstantiated assertions that a fact issue exists will not suffice.  *Celotex*, 106 S. Ct. at 2548.  Instead, "the nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case."  *Morris*, 144 F.3d at 380.

In considering a motion for summary judgment, all reasonable inferences to be drawn from both the evidence and undisputed facts are be viewed in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 106 S. Ct. 1348, 1356 (1986).  "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper.  *Kelley v. Price- Macemon, Inc.*, 992 F.2d 1408, 1413 (5th Cir. 1993) (citing *Matsushita*, 106 S. Ct. at 1351).  On the other hand, if "the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper."  *Id.*  Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial."  *Anderson*, 106 S. Ct. at 2513.


## III.    Applicable Law

Plaintiffs have alleged claims of disparate treatment discrimination, hostile work environment and retaliation under Title VII, the Age Discrimination in Employment Act (ADEA), the Texas Labor Code, and 42 U.S.C. § 1981.

---

[1] Where "the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim."  *Norwegian Bulk Transport A/S v. International Marine Terminals Partnership*, 520 F.3d 409, 412 (5th Cir. 2008).

Title VII proscribes an employer from discharging or otherwise discriminating against any individual because of such individual's race, color, religion, sex, or national origin, 42 U.S.C. § 2000e-2(a)(1), and the ADEA proscribes similar treatment on the basis of age. *See* 29 U.S.C. § 623(a)(1); *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 651 (5th Cir. 2004). Title VII also proscribes an employer from retaliating against an employee for opposing an unlawful employment practice. 42 U.S.C. § 2000e-3. While parallel claims of discrimination and retaliation can additionally be brought under 42 U.S.C. § 1981 and the Texas Labor Code, the elements and standard of proof applicable to Title VII claims are also applicable to race and national origin discrimination claims under 42 U.S.C. § 1981, *see Jones v. Robinson Property Group, L.P.*, 427 F.3d 987, 992 (5th Cir. 2005)*; Tanik v. Southern Methodist University*, 116 F.3d 775 (5th Cir.), *cert. denied*, 522 U.S. 1015 (1997); *Southard v. Texas Board of Criminal Justice*, 114 F.3d 539, 554 (5th Cir. 1997), and discrimination claims brought under the Texas Labor Code. *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 403-404 n. 2 (5th Cir. 1999).

Actionable employment discrimination under Title VII can be based on disparate treatment, disparate impact, and/or a hostile work environment. *Barnes v. McHugh*, Civil Action No. 12-2491, 2013 WL 3561679 *11 (E.D. Tex. July 11, 2013) ("Courts have recognized several types of Title VII and ADEA claims. A plaintiff can assert "status-based" Title VII claims under 42 U.S.C.A. § 2000e–2(a) and (k), "retaliation" claims under 42 U.S.C .A. § 2000e–3, and "hostile work environment" claims, both for status-based discrimination and retaliation. Title VII status-based discrimination claims are divided into two categories: "disparate treatment" claims pursuant to § 2000e–2(a)(1), and "disparate impact" claims pursuant to 2000e–2(k)"). At issue in this case is disparate treatment discrimination, and hostile work environment discrimination. Also at issue are

claims by each Plaintiff of retaliation.

### A.    Disparate Treatment Discrimination

For the first type of discrimination alleged in this case – that based on disparate treatment – a plaintiff must either offer direct evidence of discrimination or utilize the indirect method of proof set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  *See Taylor v. Principal Fin. Group, Inc.*, 93 F.3d 155, 162 (5th Cir.), *cert. denied*, 519 U.S. 1029 (1996); *Daigle v. Liberty Life Ins. Co.*, 70 F.3d 394, 396 (5th Cir. 1995).

"Direct evidence of discrimination is evidence which, if believed, would prove the existence of a fact (i.e., unlawful discrimination) without any inferences or presumptions."  *Bodenheimer v. PPG Indus. Inc.*, 5 F.3d 955, 958 (5th Cir. 1993).  For a statement to suffice as direct evidence of discrimination, the statement must directly suggest the existence of bias and must not be subject to interpretation as anything other than a reflection of bias.  *See Mooney v. Aramco Svcs. Co.*, 54 F.3d 1207, 1217 (5th Cir. 1995) (citing *Davis v. Chevron U.S.A. Inc.*, 14 F.3d 1082, 1085 (5th Cir. 1994)); *see also Maestas v. Apple, Inc.*, 546 F. App'x 422, 427-28 (5th Cir. 2013) ("A comment demonstrates an employer's discriminatory intent if it is 'direct and unambiguous, allowing a reasonable jury to conclude without any inferences or presumptions that age was an impermissible factor in the decision to terminate the employee.'") (quoting *Moss v. BMC Software, Inc.*, 610 F.3d 917, 929 (5th Cir. 2010)).  Workplace comments that are alleged to be direct evidence of discrimination are only considered as such if the comments are: "'1) related to the protected class of persons of which the plaintiff is a member; 2) proximate in time to the complained-of adverse employment decision; 3) made by an individual with authority over the employment decision at issue; and 4) related to the employment decision at issue.'" *Jackson*, 602 F.3d at 380 (quoting *Rubinstein v. Adm'rs of Tulane*

*Educ. Fund*, 218 F.3d 392, 400-01 (5th Cir. 2000)).  If the alleged workplace comment does not meet these four requirements, the comment cannot be considered direct evidence of discrimination, and is treated as a "stray remark."  *Id.*

Under the indirect method of proof set forth in *McDonnell Douglas*, a plaintiff must first establish a *prima facie* case of discrimination.  A *prima facie* case of disparate treatment discrimination under Title VII, § 1981, and the Texas Labor Code requires proof that the plaintiff (1) is a member of a protected class; (2) was qualified for the position; (3) suffered an adverse employment action; and (4) was treated less favorably than those outside the protected class.  *Okoye v. Univ. of Texas Houston Health Science Center*, 245 F.3d 507, 512-13 (5th Cir. 2001); *Rutherford v. Harris County*, 197 F.3d 173, 184 (5th Cir. 1999).  A *prima facie* case of disparate treatment under the ADEA is similar, but not identical, and requires proof that the plaintiff: (1) was a member of the protected class (over 40); (2) was qualified  for the position; (3) suffered an adverse employment decision; and (4) was either "replaced by someone younger or treated less favorably than similarly situated younger employees (i.e., suffered from disparate treatment because of membership in the protected class)."  *Leal v. McHugh*, 731 F.3d 405, 410-11 (5th Cir.  2013); *see also Jackson* v. Cal-Western Packaging Corp., 602 F.3d 374, 378 (5th Cir. 2010).

For purposes of maintaining a disparate treatment claim under Title VII, § 1981, the ADEA, and the state law counterparts, sex, race, national origin, and age (over 40) are all protected classes. 42 U.S.C. § 2000e-et seq; 29 U.S.C. 623(a)(1).  A plaintiff is "qualified" for a position if the "objective requirements" for the  position are met. *Johnson v. Louisiana*, 351 F.3d 616, 622 (5th Cir. 2003).  A plaintiff suffers an adverse employment action when there is "a significant change in [the plaintiff's] employment status, such as hiring, firing, failing to promote, reassignment with

significantly different responsibilities, or a decision causing a significant change in benefits.'" *Butler v. Ysleta Indep. Sch. Dist.*, 161 F.3d 263, 268 (5th Cir. 1998) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. at 761). A plaintiff is treated "less favorably" when the defendant gives preferential treatment to [a member outside the protected class] under 'nearly identical' circumstances." *Little v. Republic Refining Co., Ltd.*, 924 F.2d 93, 97 (5th Cir. 1991); *see also Aguinaga v. Texas Alcohol and Beverage Comm'n*, 98 Fed. Appx. 328, 331, 2004 WL 1161914 (5th Cir. 2004) (the differing treatment must be under nearly identical circumstances to satisfy the fourth element of a *prima facie* case of disparate treatment).

Once a *prima facie* case has been established, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions. *See McDonnell Douglas,* 411 U.S. at 802. "The defendant's burden during this second step is satisfied by producing evidence, which, '*taken as true*, would *permit* the conclusion that there was a nondiscriminatory reason'" for the defendant's adverse hiring decision. *Price v. Federal Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002) (quoting *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509 (1993) (emphasis in original)). If the employer sustains its burden, the *prima facie* case is dissolved, and the burden shifts back to the plaintiff to establish that the reason proffered by the employer is merely a pretext for discrimination. *Id.*; *McDonnell Douglas,* 411 U.S. at 802-803. To demonstrate a "pretext for discrimination" the plaintiff must show both that the employer's proffered reason was false, that is, not its true reason, or that the reason is "unworthy of credence". *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143 (2000); *see also Jackson*, 602 F.3d at 378-79 ("A plaintiff may show pretext 'either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'"). A plaintiff can avoid summary judgment on a Title VII claim if,

at the third step of the burden shifting analysis, the plaintiff can "substantiate his claim of pretext through evidence demonstrating that discrimination lay at the heart of the employer's decision." *Price*, 283 F.3d at 720.  With respect to an ADEA claim, which is a bit different at the third step of the burden-shifting framework, a plaintiff can avoid summary judgment if the evidence raises a genuine issue of material fact as to whether the plaintiff was treated less favorably than those outside the protected class (under 40) in nearly identical conditions, or if the evidence raises a genuine issue of material fact as to whether the employer's stated reason for the adverse employment decision was not what actually motivated the employer.  *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010).  "It is insufficient under the ADEA to show that discrimination was a motivating factor; [the plaintiff] must show that age was the 'but-for' cause of the challenged adverse employment action." *Dees v. United Rentals North America, Inc.*, 505 F. App'x 302, 304 (5th Cir. 2013).

### B.   Hostile Work Environment Discrimination

For the second class of discrimination claims – those based on a hostile work environment – a plaintiff must prove: (1) membership in a protected class; (2) unwelcome harassment; (3) harassment based on the plaintiff's membership in a protected class; and (4) harassment that affects a term, condition, or privilege of employment.  *See Cortes v. Maxus Exploration Co.*, 977 F.2d 195, 199 (5th Cir. 1992); *see also McCray v. DPC Indus., Inc.*, 942 F. Supp. 288, 292 (E.D. Tex. 1996). As with disparate treatment discrimination claims, sex, race, national origin, and age (over 40) are all protected classes for purposes of a hostile work environment claim.  As for the harassment complained of, it must be both unwelcome, and b*ased on* the plaintiff's membership in a protected class.  *See, e.g.*, *Harris-Childs v. Medco Health Solutions, Inc.*, No. 4:03-CV-77-Y, 2005 WL 562720, at *6 (N.D. Tex. Mar. 10, 2005) ("To establish a *prima-facie* case of racial harassment, the

10

plaintiff must provide evidence that the complained-of conduct had a racial character or purpose."),

*aff'd*, 2006 WL 616022 (5th Cir. 2006) ("[W]e agree with the district court that Appellant has failed

to show that the harassment was racially based"); *Vallecillo v. U.S. Dep't of Housing & Urban Dev.*,

155 F.App'x 764, 767 (5th Cir. 2005) ("Accepting all of the incidents Vallecillo lists as true, none

are related to his protected status."); *Smith v. Ridge*, Civil Action No. H-03-5864, 2005 WL 6443884

*4-5 (S.D. Tex. Feb. 8, 2005) (granting summary judgment on hostile work environment age

discrimination claim where there was no summary judgment that any harassment "was based on [

] age").  Finally, the alleged harassment must be sufficiently severe or pervasive such that it can be

said to affect a term, condition or privilege of employment.  *Harris v. Forklift Sys., Inc.*, 510 U.S.

17, 21-23 (1993).  Whether the harassment is sufficiently severe or pervasive is based on the totality

of the circumstances:

> [W]hether an environment is 'hostile' or 'abusive' can be determined only by looking
> at all the circumstances.  These may include the frequency of the discriminatory
> conduct; its severity; whether it is physically threatening or humiliating, or a mere
> offensive utterance; and whether it unreasonably interferes with an employee's work
> performance.

*Id.* at 23; *accord Long v. Eastfield College*, 88 F.3d 300, 309 (5th Cir. 1996).  The conduct must be

both objectively hostile to a reasonable person and the plaintiff must subjectively perceive the

environment to be abusive.  *Harris*, 510 U.S. at 21-22.  The "mere utterance of an ethnic or racial

epithet which engenders offensive feelings in an employee" does not sufficiently affect a person's

employment conditions to fall within the ambit of Title VII.  *Rogers v. EEOC*, 454 F.2d 234, 238

(5th Cir. 1971), *cert. denied*, 406 U.S. 957 (1972); *see also Meritor Sav. Bank, FSB v. Vinson*, 477

U.S. 57 (1986).  Moreover, racial comments which are sporadic in nature or made in casual

conversation do not violate Title VII.  *McCray*, 942 F.Supp. at 293; *Hicks v. Gates Rubber Co.*, 833

F.2d 1406, 1412 (10th Cir. 1987). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the "'terms and conditions of employment.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 778 (1998). Instead, there must be a "steady barrage of opprobrious racial comment." *McCray*, 942 F.Supp. at 293; *Johnson v. Bunny Bread Co.*, 646 F.2d 1250, 1257 (8th Cir. 1981).

## C.      Retaliation

For retaliation claims, a plaintiff must first establish a *prima facie* case of retaliation, with proof  that: (1) the plaintiff engaged in protected activity, (2) an adverse employment action occurred, and (3) a causal link exists between the protected activity and the adverse employment decision. *Sherrod v. American Airlines, Inc.*, 132 F.3d 1112, 1122 & n.8 (5th Cir. 1988). "Protected activity is defined as opposition to any practice rendered unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding or hearing under Title VII." *Green v. Adm'rs of the Tulane Educ. Fund*, 284 F.3d 642, 657 (5th Cir. 2002). What constitutes an "adverse employment action" for purposes of a retaliation claim is not the same as what constitutes an adverse employment action for purposes of a disparate treatment claim. In *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006), the United States Supreme Court made it clear that for purposes of the anti-retaliation provisions of Title VII, an adverse employment action is not limited to ultimate employment decisions, but instead encompasses actions taken by an employer that are harmful enough that it "might have dissuaded a reasonable worker from" engaging in protected activity. Thus, what constitutes an adverse employment action for purposes of a retaliation claim is highly dependent upon the context and circumstances at issue. *McCoy v. City of Shreveport*, 492 F.3d 551, 560 (5th Cir. 2007); *see also Monsivais v. Arbitron, Inc.*, 44

12

F.Supp.3d 702, 707 (S.D. Tex. 2014) (what constitutes an adverse employment action for a retaliation claim is "an objective fact-specific review 'because the significance of any given act of retaliation will often depend upon the particular circumstances.   Context matters.'") (quoting *Burlington N.*, 548 U.S. 53, 69)).   As for the *prima facie* requirement of a causal link between protected activity and an adverse employment action, the timing of an adverse employment action in relation to when an employee engaged in a protected activity "can be a significant, although not necessarily determinative, factor" in determining whether a causal nexus exists.   *See Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1092 (5th Cir. 1995); *see, e.g.*, *Grizzle v. Travelers Health Network, Inc.*, 14 F.3d 261, 268 (5th Cir. 1994) (finding that a ten month lapse between filing a complaint with a supervisor and an adverse employment action failed to support an inference of retaliation).   At the *prima facie* stage, a "but for" causal link need not be shown.   *Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001).

Once the plaintiff establishes a *prima facie* case of retaliation, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment decision.   *Sherrod*, 132 F.3d at 1122.   If the defendant carries this burden, the plaintiff must prove that the stated nondiscriminatory reason for the adverse employment action is a "pretext" for discrimination by either directly persuading "the trier of fact that 'a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered reason is unworthy of credence'" *Thomas v. Clayton Williams Energy, Inc.*, 2 S.W.3d 734, 739-40 (Tex. App.–14th Dist. 1999) (quoting *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)).   To carry the ultimate burden on a retaliation claim, a plaintiff must also show that a defendant would not have taken the adverse employment action "but for" the plaintiff's participation in the protected activity.   *See*

*Scrivner v. Socorro Indep. Sch. Dist.*, 169 F.3d 969, 972 (5th Cir. 1999).

## IV.    Discussion – Disparate Treatment Claims

### A.    Gaspari

Gaspari's disparate treatment discrimination claim is based on the allegations in the First Amended Complaint[2] that FMC discriminated against him by "making offensive comments and subjecting Plaintiff to harassing behavior on a systematic basis based on his gender and stereotypes about his gender; giving preferential treatment to employees outside of Plaintiff's protected class; refusing to address Plaintiff's complaints; unduly criticizing Plaintiff's job performance, and ultimately terminating [him]."  Plaintiffs' First Amended Complaint (Document No. 38) at 37. Assuming, without deciding, that Gaspari has established a *prima facie* case of disparate treatment discrimination based on Defendant FMC's sex stereotyping[3] and his termination,[4] summary

---

[2] Plaintiffs' First Amended Complaint (Document No. 38) was filed over eighteen months after Defendant filed its initial Motion for Summary Judgment (Document No. 26).

[3] In *EEOC v. Boh Brothers Constr. Co.*, 731 F.3d 444, 456 (5th Cir. 2013), the Fifth Circuit made it clear that "a plaintiff may establish a sexual harassment claim with evidence of sex stereotyping" and that "evidence of a plaintiff's perceived failure to conform to traditional gender stereotypes" can "satisfy Title VII's because of sex requirement."  *Id.* at 455.   In contrast, Title VII does not recognize a claim for discrimination based "sexual orientation or perceived sexual orientation."  *Walters v. BG Foods, Inc.*, Civil Action No. 1:14-CV-96, 2015 WL 1926224 *4 (E.D. Tex. April 25, 2015).  In this case, despite the allegations in the First Amended Complaint that Gaspari's claims are based on sex stereotyping, the type of conduct Gaspari complains about also relates to his sexual orientation and/or his perceived sexual orientation.

[4] As set forth more fully, *infra*, Gaspari's other complaints – criticisms of his job performance, a failure to train, support or assist him with his duties, alleged preferential treatment that had no effect on the terms, conditions or benefits of Gaspari's employment, and offensive and/or disparaging comments – do not rise to the level of an adverse employment action for purposes of a *prima facie* case of disparate treatment discrimination.  As for Gaspari's allegation that in May 2013 he applied for and was denied a position as a supply chain manager,

judgment is warranted for Defendant FMC on this claim because the summary judgment evidence does not raise a genuine issue of material fact on whether FMC's legitimate, nondiscriminatory reason for Gaspari's termination was a pretext for sex stereotyping discrimination.

At the time FMC filed its Motion for Summary Judgment, Gaspari was still employed by FMC. In addition, at the time FMC filed its initial Motion for Summary Judgment, Gaspari had not established a *prima facie* claim of sex/sex stereotyping discrimination because he had not come forth with any summary judgment evidence that he suffered an adverse employment action. While Gaspari argued, in response to FMC's initial Motion for Summary Judgment, that he "was denied an extension to his relocation benefits and a promotion," he offered no summary judgment evidence that he was entitled to relocation benefits and/or qualified for a promotion, *and* that similarly situated other FMC employees were treated more favorably than he in terms of relocation benefits and promotion. Since the filing of FMC's initial Motion for Summary Judgment, Gaspari has now alleged in the First Amended Complaint that he was terminated by FMC on January 22, 2015, and that his "termination was discriminatory and in retaliation for his continued opposition to FMC's unlawful employment practices." First Amended Complaint (Document No. 38) at 16.

In the subsequently filed Motion for Summary Judgment on November 30, 2015 (Document No. 53) FMC addresses all of Gaspari's claims in the context of his January 2015 termination from FMC. Gaspari, in response, focuses solely on his termination *as support for his retaliation claim*.

---

Gaspari has failed to offer any summary judgment evidence that he met the objective requirements for that position. Indeed, FMC's uncontroverted summary judgment evidence establishes that Gaspari, who was hired by FMC in July 2012, did not meet the objective requirements for the position because he had not been employed by FMC for a period of eighteen months. *See* Gaspari Deposition at 258 (Document No. 26-4 at 40-42); FMC Human Resources Polices and Procedures Job Posting (Document No. 26-30).

In particular, and as pointed out in FMC's Reply (Document No. 63), Gaspari has all but abandoned his disparate treatment discrimination claim, as well he should.   Addressing the disparate treatment claim in terms of Gaspari's termination, FMC articulated, and presented summary judgment evidence, of a legitimate, nondiscriminatory reason for Gaspari's termination – his failure to meet the requirements of a June 2014 performance improvement plan.  *Agoh v. Hyatt Corp.*, 992 F.Supp.2d 722, 745-46 (S.D. Tex 2014) (employer met its burden of production at the second step of the burden-shifting framework by pointing to employee's failure to meet the requirements of a performance improvement plan).  Gaspari, in response to this legitimate, non-discriminatory reason, has come forth with no summary judgment evidence that this reason was a pretext for sex or sex stereotyping discrimination by FMC.  Instead, Gaspari clearly and unequivocally argues that his termination was in *retaliation* for his continued employment-related complaints.  Nowhere does Gaspari point to any evidence that his termination was based on his sex or any sex stereotyping.  As such, FMC is entitled to summary judgment on Gaspari's sex/sex stereotyping disparate treatment claim under both Title VII and the Texas Labor Code.

## B.    Ravishankar

Ravishankar's disparate treatment discrimination claim is based on the allegations in Plaintiffs' First Amended Complaint that FMC "discriminated against [him] based on his race and national origin by, among other things: making racist comments and subjecting [him] to harassing behavior on a systematic basis; denying [him] guidance, mentoring, assistance, and support he requested and needed; prohibiting [him] from meeting with a supplier who he was assigned to manage; denying [him] a position that went to a Caucasian who was not similarly qualified; refusing to address [his] complaints; unduly criticizing [his] job performance; and constructively discharging

16

[him]." Plaintiff's First Amended Complaint (Document No. 38 at 34).  Because the comments Ravishankar complains about are not direct evidence of discrimination, and because Ravishankar has not come forth with summary judgment evidence to support a *prima facie* claim of disparate treatment discrimination, FMC is entitled to summary judgment on that claim.

Ravishankar maintains, in response to FMC's Motion for Summary judgment that there is "direct evidence of discrimination based on Plaintiff Ravishankar's national origin.  The record is replete with statements made by Kurt VanWormer – Plaintiff Ravishankar's direct supervisor who was vested with the authority to take employment actions against him – based on his national origin. Kurt VanWormer called Plaintiff Ravishankar a terrorist shortly before his employment at FMC ended."  Plaintiffs' Response to Defendant's Motion for Summary Judgment (Document No. 27) at 70).  Contrary to Ravishankar's conclusory arguments, the statements and comments complained of by Ravishankar are not direct evidence of discrimination.  The summary judgment evidence shows that Ravishankar resigned in May 2013, after he had been offered, and had accepted, another job. Ravishankar Deposition at 282-284 (Document Nos 26-3 at 33; Document No. 27-2 at 76-77). Ravishankar has not alleged or shown that he suffered an adverse employment action and has also not shown that any complained of statement or comment was *related* to an adverse employment decision, which is required for racial comments to be direct evidence of discrimination.  *See e.g., Rutland-Simpson v. Eli Lilly & Co.*, 940 F.Supp.2d 504, 510 (S.D. Tex. 2013) (racial comment that not related to termination was not direct evidence of discrimination), *aff'd*, 575 F. App'x 314 (5th Cir. 2014).

As for the indirect method of proving disparate treatment discrimination, Ravishankar's arguments and evidence also are insufficient to prove a *prima facie* case of race/national origin

17

discrimination.  Ravishankar, a male of Indian origin, falls within protected class based on his race and/or national origin.  Where his *prima face* case fails is in offering evidence that he suffered an adverse employment action.  Criticisms of his job performance and poor performance reviews, a failure to train, support or assist him with his duties, when such failure does not alter an employee's compensation, benefits or duties, and a failure or refusal to be assigned a particular client or supplier do not constitute adverse employment actions for purposes of a *prima facie* case of disparate treatment discrimination.  *See Mitchell v. Snow*, 326 F. App'x 852, 855 (5th Cir. 2009) ("'[I]n cases where the evidence produces no objective showing of a loss in compensation, duties, or benefits," no adverse employment action exists.) (quoting  *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 283 (5th Cir.2004)); *see also  Watkins v. Paulsen*, 332 F. App'x 958, 960 (5th Cir. 2009) (poor performance review does not constitute an adverse employment action for disparate treatment claim); *Jones v. Dallas County*, 47 F.Supp.3d 469, 496 (N.D. Tex. 2014) (unequal access to tools, greater performance scrutiny and criticism, exclusion from certain meetings, and unequal break time are not adverse employment actions for purposes of a disparate treatment discrimination claim); *Brooks v. Firestone Polymers, LLC*, 70 F.Supp.3d 816, 836 (E.D. Tex. 2014) (failure to train is not an adverse employment action for purposes of a disparate treatment claim).  Moreover, to the extent Ravishankar maintains that he was "constructively discharged" due to the harassment he suffered at the hands of his superiors, that allegation is related to Ravishankar's hostile work environment claim, which will be discussed more fully below.  In all, Ravishankar has not come forth with summary judgment evidence that supports a *prima facie* case of disparate treatment race or national origin discrimination.  As such, FMC is entitled to summary judgment on Ravishankar's disparate treatment discrimination claim under Title VII, § 1981 and the Texas Labor Code.

18

C.      Smith

Smith's disparate treatment claim is based on the allegations in Plaintiffs' First Amended Complaint that FMC discriminated against her, based on her sex, by "demoting her to 'Admin Support' from 'Global Supply Chain Specialist;' failing to provide her with training; denying her transfers/positions she applied for; issuing her a wrongful 'needs improvement' PDD; demoting her pay grade; and threatening her with termination."  Plaintiffs' Amended Complaint (Document No. 38) at 37.  Her age discrimination claim is generally based on the same allegations – that FMC discriminated against her based on he age by "demoting her to 'Admin Support' from 'Global Supply Chain Specialist;' failing to provide her with training; denying her transfers/positions she applied for; issuing her a wrongful 'needs improvement' PDD; demoting her pay grade; and threatening her with termination."  Plaintiffs' Amended Complaint (Document No. 38) at 40.

As set forth above, complaints about lack of training, poor performance evaluations and job performance criticisms do not constitute adverse employment actions for purposes of a *prima facie* case of disparate treatment sex or age discrimination.   Similarly, threats of termination are not adverse employment actions. *Breaux v. City of Garland*, 205 F.3d 150, 159 (5th Cir.), *cert. denied*, 531 U.S. 816 (2000); *Lopez v. Kempthorne*, 684 F.Supp.2d 827, 886 (S.D. Tex. 2010) ("The Fifth Circuit has also held that criticism, oral threats, abusive remarks and threats of termination did not rise to the level of adverse employment action.").  As for Smith's allegations and summary judgment evidence that she was demoted from "Supply Chain Specialist" to an administrative support position and thereby suffered a reduction in pay, that demotion *does* constitute an adverse employment action. Where Smith's *prima facie* case fails, however, is in her failure to show, or come forth with any summary judgment evidence, that she was replaced as a Supply Chain Specialist by someone outside

19

her protected class.[5][6]  Smith has therefore not established a *prima facie* case of disparate treatment sex or age discrimination.

Moreover, even if it could be said that Smith had made out a *prima facie* case of disparate treatment discrimination, that discrimination claim fails on the merits in light of the legitimate, nondiscriminatory reason articulated for her demotion – to align her position and salary with her actual job duties – and Smith's failure to present any evidence that this reason was a pretext for either sex or age discrimination.  As pointed out and acknowledged by Smith, the job duties she was performing as a "Supply Chain Specialist" were administrative – not supply chain specialist duties.  *See* Smith's comments on her February 15, 2012, Performance and Development Discussion (Document No. 26-29 at 5) ("The GSM Specialist position is currently setup to fail if 85% of job scope involves administrative duties").  For that reason, and because Smith has not come forth with any summary judgment evidence that raises a genuine issue of material fact on whether FMC's legitimate, nondiscriminatory reason for her demotion was a *pretext* for sex and/or age discrimination, FMC is entitled to summary judgment on Smith's disparate treatment sex and age discrimination claims.

---

[5] FMC asserts in its Motion for Summary Judgment, but has not pointed to any summary judgment evidence in support, that upon Smith's demotion no one replaced Smith as a Supply Chain Specialist.

[6] Smith's claim that she was denied certain transfers she applied for also cannot suffice as an adverse employment action that would support a *prima facie* case of disparate treatment discrimination because Smith herself acknowledges that she as not qualified for any of the transfers because of the "Needs Improvement" on a Performance and Development Discussion. *See* Plaintiffs' Response to FMC's Motion for Summary Judgment at 33 (Document No. 27 at 40) ("Smith was denied these positions because she had received a "Needs Improvement" on her PDD and had been demoted from a Grade 14 to a Grade 13.").

V.      **Discussion – Hostile Work Environment Claims**

Regardless of the labeling of claims and breadth of the allegations in Plaintiffs' Amended
Complaint, most of the particularized factual allegations in Plaintiffs' pleading relate to Plaintiffs'
hostile work environment claims.  In that regard, each Plaintiff  maintains that they were harassed
by co-workers and/or supervisors at FMC while they were employed in the Global Sourcing and
Manufacturing ("GSM") Department at FMC.  The alleged harassors include Randy Reich, who was
the GSM Director, Kurt VanWormer, who was the GSM Analysis Manager, Ana Santiago, a senior
GSM Supply Chain Manager, and Jeff DeTone, who was a GSM Supply Chain Manager until June
1, 2013, when he was promoted to Global Supply Development Manager.  As of May 17, 2013,
neither Reich nor VanWormer remained employed by FMC.  In addition, Ana Santiago retired in
August 2013.  Plaintiff Ravishankar resigned in an email dated May 16, 2013, and later reaffirmed
his intention to resign despite being told that both Reich and VanWormer were no longer employed
by FMC.  Plaintiff Gaspari was terminated on January 22, 2015.  Plaintiff Smith remains employed
at FMC.

Gaspari alleges and has submitted summary judgment evidence that he was harassed by Ana
Santiago, who he alleges was his supervisor until February 2013, and who he claims made comments
about his clothing and the earrings he wore; by Kurt VanWormer, one of his supervisors, who told
Gaspari he should try the "House of Pies" ("House of Guys") and should live in Montrose to be near
his "kind," who called him a fashionista and flicked his wrist at him while making comments about
Gaspari's "kind"; and by Jeff DeTone, who was first a co-worker, and then Gaspari's supervisor,
who called him a "girl" and "sister," but later apologized for calling him those names. Ravishankar
alleges and has submitted summary judgment evidence that he was harassed by Ana Santiago, a co-

21

worker, who told him he was stupid and that she'd have to send him back to his "third world country," laughed when a supplier asked him if he had ever worked at a call center, and made faces at, rolled her eyes and  smirked at Ravishankar during meetings; Randy Reich, his supervisor, who told Ravishankar that he didn't understand what he was saying, and made fun of India; and by Kurt VanWormer, another supervisor, who gave him a Southern name, "Bobby" and continually referred to Ravishankar as "Bobby," called him "boy," made comments about Ravishankar being mistaken for a terrorist, made jokes about Indian festivals, made fun of his food, and spoke of steakhouses and meat packing plants knowing that "cows" were sacred to Indians.  Finally, Smith alleges and has submitted summary judgment evidence that she was harassed by Randy Reich, her supervisor, who leered at her chest, told her she was a "bleeding heart" and was acting like a "victim;" and by Kurt VanWormer, another supervisor, who asked her on numerous occasions how old she was, called her a "hippy chick," and told her she needed a "sugar daddy."  In response to each hostile work environment claim, FMC first relies on its affirmative *Ellerth/Faragher* defense.  FMC then, additionally and alternatively, argues that none of the harassment complained of by Gaspari, Ravishankar, or Smith was sufficiently severe or and pervasive such that it affected a term, condition or privilege of their employment.

In *Burlington Industries v. Ellerth*, 524 U.S. 742, 765 (1998), and *Faragher v. Boca Raton*, 524 U.S. 775, 807 (1998), the United States Supreme Court articulated and explained the applicability of an employer's affirmative defense to hostile work environment claims based on the availability and utilization of the employer's corrective measures.  In *Ellerth* and *Faragher*, the Supreme Court collectively held:

22

> In order to accommodate the principle of vicarious liability for harm caused by misuse of supervisory authority, as well as Title VII's equally basic policies of encouraging forethought by employers and saving action by objecting employees, we adopt the following holding [ ].   An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee.   When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence, Fed. R. Civ. P. 8(c).   The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correctly promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.

*Id.*   Thus, to maintain and prevail on an *Ellerth/Faragher* affirmative defense, an employer must show: "'(a) that the employer exercised reasonable care to prevent and correct promptly any [ ] harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.'" *E.E.O.C. v. Boh Bros. Const. Co.*, 731 F.3d 444, 462 (5th Cir. 2013) (quoting *Watts v. Kroger Co.,* 170 F.3d 505, 509–10 (5th Cir.1999)).

In support of its *Ellerth/Faragher* defense, FMC points to uncontroverted summary judgment that it had a zero-tolerance, open-door policy for complaints about any type of discrimination and/or harassment.   In addition, FMC points to summary judgment evidence that each Plaintiff was aware of FMC's policies and the manner in which those corrective policies could be invoked.   Finally, FMC argues that each Plaintiff, while complaining in October 2012 about the management styles and practices of Reich and VanWormer, as well as the offensive and volatile character of Santiago, did not complain about any discrimination or any harassment based on their respective protected classes until February 2013, and therefore they, as a matter of law, "unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm

otherwise."[7]

Whether summary judgment is warranted on FMC's *Ellerth/Faragher* affirmative defense need not be decided in this case because the summary judgment evidence shows that FMC is entitled to summary judgment on the merits of each Plaintiffs' hostile work environment claim(s).  Key to a hostile work environment claim is proof that the harassment was based on an employee's protected class and was severe and/or pervasive.  Here, taking the summary judgment evidence in a light most favorable to each Plaintiff, it cannot be said that the harassment complained of was either sufficiently severe or sufficiently pervasive so as to alter the terms, conditions or privileges of Plaintiffs' employment with FMC.

With respect to Plaintiff Gaspari, who was employed by FMC from July 16, 2012 to January 22, 2015, when he was terminated, none of the complained of harassment was objectively severe.  As for whether it was "pervasive," Gaspari's deposition testimony, which he has submitted in response to FMC's Motions for Summary Judgment, and which is taken in a light most favorable to Gaspari and his hostile work environment claim, simply does not reveal the type of pervasive, or "steady barrage" of, harassment that has been held to create a hostile work environment.  Being called or considered a "fashionista," and having supervisors or co-workers occasionally flick their wrists when speaking to him, occasionally and vaguely refer to his "kind," and mention to him on a few occasions certain areas and restaurants in Houston (Montrose and the "House of Pies") is not

---

[7] An employee unreasonably fails to take advantage of preventive or corrective opportunities offered by the employer when no complaints are made and no information is provided to the employer of harassment based on the employee's membership in a protected class.  *See e.g., Casiano v. AT&T, Corp.*, 213 F.3d 278, 283 (5th Cir. 2000) (*Ellerth/Faragher* defense was available to employer where summary judgment evidence showed that employee made complaint and spoke to human resources about supervisor but did not mention sexual misconduct or harassment based on sex).

either the type or frequency of harassment that has ever supported a hostile work environment claim.

As for Plaintiff Ravishankar, who was employed by FMC for nearly three years, from June 20, 2010 to May 25, 2013, the only harassment complained of that could be considered pervasive is VanWormer calling him "Bobby." But that Americanized name VanWormer used for Ravishankar, which VanWormer appears to have used continuously, was not "harassing" and was not necessarily based on Ravishankar's national origin. Ravishankar testified as his deposition that with the exception of VanWormer's terrorist comment he took VanWormer's jokes lightly. Ravishankar Deposition at 121 (Document No. 27-2 at 28) ("I said, 'Kurt [VanWormer] I might takes your jokes lightly but not – not when you call me a terrorist."). In addition, Ravishankar testified that there was no inherent connection between the name "Bobby" and his race or national origin. *Id.* at 203 (Q: ". . . being called "Bobby" does not inherently reference your national origin"; A: "Correct"). Moreover, Jeffrey DeTone, who was one of Ravishankar's co-workers up until the time Ravishankar resigned, testified that VanWormer called Ravishankar "Bobby," not necessarily as a slur on his Indian origin, but because it was hard for him to pronounce Ravishankar's name. DeTone Deposition at 209 (Document No. 27-5 at 15) ("I think I recall being in Kurt's office when he said – he told Arjun he wanted to call him Bobby because his name was too hard to pronounce."). As for the "terrorist" comment(s)/reference(s), they were not pervasive, and were not, given the context of the references, "severe." In this day and age, being called a "terrorist" based solely on a person's national origin *may* be considered harassment that is "severe." But the summary judgment evidence, taken in a light most favorable to Ravishankar, does not reveal that VanWormer *called or otherwise accused* Ravishankar of being a terrorist. Instead, VanWormer's comments referred to the possibility that others could view Ravishankar as a potential terrorist. Ravishankar testified

25

about VanWormer's "terrorist" comment at his deposition as follows:

> Q:  Okay.  Any other things that he said to you that was in appropriate?
>
> A:  He called me a terrorist.
>
> Q:  Can you tell us about that conversation?
>
> A:  And towards the later half of February, 2012, or 2013, I was going to San Francisco; and I was about to board a plane.
>
> And he said, "Hey, be careful out there.  They might think you're a terrorist and take you in for additional questioning."
>
> *  *  *
>
> Q:  Okay.  Anything else that preceded this terrorism incident that you talked about – not terrorism, his reference to terrorism.  There wasn't any actual terrorism event, right?
>
> A:  Correct.
>
> Q:  Okay.
>
> A:  No.
>
> Q:  Okay.
>
> A:  I mean, he was --
>
> Q:  Okay.  And so you – so you talked to him about the terrorism event, and you thought that that was in – well, actually, it was related to a plane trip, right, they might think you were a terrorist, right?
>
> A:  Correct.

Ravishankar Deposition at 120, 124( Document No. 27-2 at 27, 31).   Given the circumstances,

testified to by Ravishankar, under which the "terrorist" comment was made, the comment was not,

and cannot be considered "severe" harassment based on Ravishankar's national origin.

Finally, as for the harassment complained of by Plaintiff Smith, who was employed by FMC

from September 7, 2010, to date, none of it was objectively severe or pervasive.  Smith testified that

Reich "leered" at her chest – particularly during the first month(s) of her employment with FMC.

Smith Deposition at  67-68 (Document No. 27-6 at 11-12).  But Smith also testified that the alleged

leering was not accompanied by any sexual comments or other conduct.  *Id.* at 87-90 (Document No.

27-6 at 20-22).  As for VanWormer's alleged questioning of Smith about her age, Smith testified

about that at her deposition as follows:

> Q:  Okay.  Did he [VanWormer] ever say why he wanted to know your age?
>
> A:  Nope.
>
> Q:  The first time it came up, were you guys – you know, was there any context to it?  Were you discussing retirement or something like that?  I mean –
>
> A:  No.  I plan on working until I'm 70.  No.  If we were looking at data on his screen, he would turn, "How old are you?"  Out of the blue, "How old are you?"
>
> Q:  Okay.  And did you ever tell him your age?
>
> A:  No.
>
> Q:  Did you ever ask why he wanted to know?
>
> A:  No.
>
> Q:  Did you ever say, "Stop asking me that," or tell him that you found it inappropriate that he was asking you that?
>
> A:  After 15 times of him asking me and then threatening to go to HR to find out my age, I said, "Why don't you ask her how old she is?  Why don't you ask her sitting right there."
>
> Q:  Who were you pointing to?
>
> A:  Carolyn Segur,  He stopped after I said that.

*Id.* at 140- 141 (Document No. 27-6 at 43-44).  That questioning, which Smith found inappropriate,

was neither objectively severe or pervasive harassment based on Smith's age.  Similarly, VanWormer's references to Smith as "hippy chick" and his comment that she needed a "sugar daddy," are not borne out by the summary judgment evidence as either being pervasive comments by VanWormer or objectively severe harassment.  Accordingly, based on the summary judgment evidence in the record, neither Reich's alleged leering, or VanWormer's questions about how old she was, or his labeling of her as a "hippy chick" in need of a "sugar daddy" were severe or pervasive forms of harassment that affected a term, condition or privilege of Smith's employment.

In all, because the summary judgment evidence, taken in a light most favorable to Plaintiffs, does not evidence severe or pervasive harassment of any Plaintiff based on each Plaintiff's protected class(ed), summary judgment is warranted in FMC's favor on all Plaintiffs' hostile work environment claims.  *See e.g. Dailey v. Shintech, Inc.*, ___ F. App'x ___, 2015 WL 6773930 (5th Cir. Nov. 3, 2015) (upholding summary judgment on hostile work environment claim where district court found that racial comments did not rise to the level of severe or pervasive harassment); *Hancock v. Barron Builders & Mgmt. Co., Inc*., 523 F.Supp.2d 571, 576 (S.D. Tex. 2007) (granting summary judgment on plaintiff's hostile work environment claim where harassment based on sex was found not be sufficiently severe or pervasive).

## VI.    Discussion – Retaliation Claims

Plaintiffs allege in their First Amended Complaint that FMC retaliated against them "for making complaints of discrimination and harassment (including retaliation against Smith for participating in three confidential human resources investigations) as follows: Termination of employment; refusal to transfer; Failure to train; Wrongful denials of tuition; Failure to provide job

duties, assistance or direction, Wrongful discipline; Wrongful Performance Development Discussion ("PDD") reviews; Denial of pre-booked travel with the team; Being ostracized, micromanaged, scrutinized; Denial of relocation benefits; Demotion; Threats of termination; Constructive discharge; Unequal pay; Failure to perform written performance reviews; Failure to provide educational benefits; Working out of class; and the Creation of a retaliatory hostile work environment." First Amended Complaint (Document No. 38) at 43.   FMC argues that summary judgment is warranted on each Plaintiff's retaliation claims because they cannot make out a *prima facie* case of retaliation.

Plaintiffs' retaliation claims can only be viewed in the context of the uncontroverted summary judgment evidence that Plaintiffs did not complain about discrimination, harassment, or retaliation until February 2013.  The initial complaints lodged by Plaintiff(s), and investigated by Jason VanHoozen of FMC's Human Resources Department, were based on boorish, belittling, and degrading comments and conduct of Reich, VanWormer and Santiago.  *See* VanHoozen Investigation Notes and written Investigation Report (Document Nos. 26-10 and 26-11).   In neither the initial complaint(s), nor in VanHoozen's investigation thereof, did Plaintiffs allege that they were being discriminated against or harassed based on their protected classes (Gaspari – sex/sex stereotyping; Ravishankar – race/national origin; Smith – sex and age).  *Id.*   It was not until February 2013 – at the earliest – that any of the Plaintiffs identified their protected classes as a basis for their complaints about Reich, VanWormer and Santiago to FMC's Human Resources Department.  Gaspari Deposition at 178, 187-88 (Document No. 26-4 at 19, 21; Document No. 27-8 at 43) (complaints to Human Resources were vague and broad and didn't mention sex or sex stereotyping); Ravishankar Deposition at 180, 198-199, 203-206 (Document No. 26-3 at 23-26; Document No. 27-2 at 59-60 (reported that he was called "Bobby" by VanWormer and yelled at and

berated by Santiago, but didn't mention race or national origin); Smith Deposition at 154-155

(Document No. 26-2 at 25-26) (didn't make complaint of sex and age discrimination until she filed

her EEOC complaint).   Thus, it was from only this point in time (at the earliest) that any of the

Plaintiffs can be said to have engaged in "protected activity" for purposes of their retaliation

claim(s).   *See Brown v. United Parcel Serv., Inc.*, 406 F. App'x 837, 840 (5th Cir. 2010) ("Title VII

does not protect opposition to all forms of unscrupulous conduct. *See, e.g., Stewart,* 586 F.3d at 332

(observing that Title VII is not a "general civility code for the American workplace"). Instead, Title

VII protects only opposition to discrimination based on "race, color, religion, sex, or national origin."

42 U.S.C. § 2000e–2(a)(1).   Magic words are not required, but *protected opposition* must at least

alert an employer to the employee's reasonable belief that unlawful discrimination is at issue. )

(emphasis added).

The summary judgment evidence, taken in a light most favorable to Plaintiffs, does support

a *prima facie* case of retaliation by Gaspari, but not by Ravishankar and Smith.   That is because it

cannot be said that Ravishankar and Smith, prior to February 2013, had engaged in any protected

activity, or that they thereafter experienced anything that could be characterized as an adverse

employment action within the meaning of *Burlington N.*   The demotion about which Smith

complains occurred in December 2012, well before her protected activity.   Smith Deposition, at 192-

93 (Document No. 27-6 at 65-66).   In addition, Ravishankar voluntarily resigned in May 2013, and

testified at his deposition that he couldn't take the hostile atmosphere at FMC anymore.

Ravishankar Deposition at 324 (Document No. 27-2 at 89) ("Nobody forced me directly to resign,

but the work environment forced me to resign").   Tellingly, he did not testify that the atmosphere

worsened after he participated in the second Human Resources investigation in February 2013.   As

for the other alleged adverse employment actions mentioned by Ravishankar and Smith in their

pleading – refusal to transfer, failure to train,  failure to provide job duties, assistance or direction,

wrongful discipline, wrongful Performance Development Discussion ("PDD") reviews, denial of

pre-booked travel with the team, being ostracized, micromanaged, scrutinized, threats of termination

and failure to perform written performance reviews –  none have been tied with any summary

judgment evidence to any protected activity, and none, either singly or in combination, were, in the

context of Ravishankar's and Smith's employment, "harmful enough" that they "might have

dissuaded a reasonable work from engaging" in protected activity.  *Burlington N.*, 548 U.S. at 68.

As for Gaspari, his retaliation claim does not fail at the *prima facie* stage, but does fail for

lack of pretext evidence.  Gaspari was terminated on January 22, 2015.   FMC maintains, and has

submitted summary judgment in support, that Gaspari was terminated when he failed to meet the

requirements of a Personal Improvement Plan.  DeTone Deposition at 301 (Document No. 53-3 at

34); January 22, 2015 Termination letter (Document No. 53-21).   Gaspari has not offered any

summary judgment that raises a genuine issue of material fact that FMC would not have terminated

him "but for" his complaints to Human Resources about discrimination and harassment.  Indeed,

Gaspari hasn't offered any summary judgment evidence that he actually fulfilled the requirements

of his PIP.  Instead, all he argues – without any evidentiary support –  is that the requirements of his

PIP were unfair and unduly burdensome.  Gaspari's unsupported belief as to FMC's reasons for his

termination is insufficient to raise a genuine issue of material fact for trial on Gaspari's retaliation

claim.  *Vicknair v. Louisiana Dept. of Public Safety and  Corr.*, 555 F. App'x 325, 331 (5th Cir.

2014) ("In the context of summary judgment, 'plaintiff's subjective belief, without more, that an

adverse employment action was retaliatory is insufficient to survive summary judgment'");

*Kennerson v. Guidry*, 135 F. App'x 639 (5th Cir. 2005) (subjective belief of discrimination and/or retaliation is insufficient to raise a genuine issue of material fact); *Cephus v. Texas Health and Human Services Comm'n*, Civ. A. H-14-696, 2015 WL 7313414 *14 (S.D. Tex. Nov. 19, 2015) (subjective belief of retaliation is insufficient)

Because the summary judgment evidence does not raise a genuine issue of material fact on Plaintiffs' retaliation claim(s), FMC is also entitled to summary judgment on those claims.

## VII.    Conclusion and Recommendation

Based on the foregoing, and the conclusion that summary judgment is warranted in Defendant FMC Technologies, Inc.'s favor on all of Plaintiffs' claims, the Magistrate Judge

RECOMMENDS that Defendant's Motions for Summary Judgment (Document Nos. 26 & 53) be GRANTED, and that summary judgment be granted in Defendant's favor on all of Plaintiffs' claims.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record.  Within fourteen (14) days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. § 636(b)(1)(C), FED. R. CIV. P. 72(b), and General Order 80-5, S.D. Texas.  Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Ware v. King*, 694 F.2d 89 (5th Cir. 1982), *cert. denied*, 461 U.S. 930 (1983); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (en banc).  Moreover, absent plain error, failure to file objections within the fourteen day period bars an aggrieved party from attacking conclusions of law on appeal. *Douglass v. United Services Automobile Association,* 79 F.3d 1415, 1429 (5th Cir. 1996).  The original of any written

objections shall be filed with the United States District Clerk.

Signed at Houston, Texas, this 4th  day of February, 2016.


Frances H. Stacy
United States Magistrate Judge

33